UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| IN RE | |
|---|---|
| Alexander V. Brown | Chapter 13<br>Case No. 07-12746-JNF |
| Debtor | |

## RESPONSE TO OBJECTION TO CONFIRMATION

NOW COMES Alexander V. Brown, debtor, and responds as follows to the objection of Deutsche Bank, etc., to confirmation of his second amended chapter 13 plan:

1. Admitted, except that the validity of the assignment is open to question, in part because it purports to be "effective as of July 23, 2007". The assignment was signed on February 20, 2008. As an interest in land, a mortgage – and by extension an *assignment* of a mortgage – cannot be backdated. Furthermore, the assignment was signed by Tamara Price, who essentially has admitted in a deposition that when she signs documents of this nature, she has no idea what she is doing. *See attached.*
2. Admitted, except that as to the last sentence. The assignment also contains a "backdating" and was signed by Tamara Price. In addition, a review of the records of the Registry of Deeds, over the internet, indicates that there is *another* virtually identical assignment recorded at book 43588, page 3. *See attached*.
3. The plan speaks for itself.
4. Upon information and belief, an appraisal has been obtained by creditor's counsel.
5. The allegation that "the Debtor does not state how he calculated this proposed interest rate" borders on frivolous because the plan clearly refers to the interest rate set forth in the Note, itself. A copy of the first page of the Note is attached, taken from the Note attached to the Proof of Claim received by postal mail sent to debtor's counsel[1].
6. Denied. Sub-paragraph 6 makes it clear that the sequence, timing and amount of payments to the creditor are within the discretion of the trustee. In further support of this denial, the debtor submits the attached memorandum concerning the interpretation of §1325(a)(5)(B)(iii).
7. Again, this aspect of the objection borders on frivolous. Here, the provision says the debtor reserves the right to seek to extend the plan term. Section 1329 clearly gives the debtor that right. Should the debtor seek to exercise that right in the future, the creditor can object and the issue will be determined by the court.
8. Admitted. The court has granted the motion and vacated said relief.
9. Denied because this misinterprets both the plan and case law in this district which requires modified secured claims to be paid through the trustee, not directly.
10. Denied.
11. Admitted. Simple logic and mathematics require that result.
12. Denied.

---

[1] The Note does not appear to have been attached to the claim form filed with the court, in violation of FRBP 3001.

13. Denied.

WHEREFORE, the debtor requests that the objection be overruled.

June 26, 2008

                Respectfully submitted,
                Alexander Brown
                By debtor's attorney,

                /s/            *David G. Baker*
                David G. Baker, Esq.
                236 Huntington Avenue, Ste. 302
                Boston, MA  02115
                617-340-3680
                BBO# 634889

### Certificate of Service

The undersigned states upon information and belief that the within paper was served upon the entities named below by the court's CM/ECF system.

                /s/            *David G. Baker*
                David G. Baker

1. Carolyn Bankowski-13    13trustee@ch13boston.com
2. Adam B. Finkel on behalf of Ameriquest Funding II, LLC    bankruptcy@kordeassoc.com
3. John Fitzgerald    USTPRegion01.BO.ECF@USDOJ.GOV
4. Victor Manougian on behalf of Ameriquest Funding II, LLC    bankruptcy@kordeassoc.com
5. Julie Taylor Moran on behalf of Sovereign Bank    bankruptcy@orlansmoran.com
6. Julie A. Ranieri on behalf of Ameriquest Funding II, LLC    bankruptcy@kordeassoc.com
7. Laurie Ray on behalf of Massachusetts Department of Revenue, Child Support Enforcement Division    martuccil@dor.state.ma.us, oneilld@dor.state.ma.us
8. Meghan Elizabeth Roche on behalf of Sovereign Bank    bankruptcy@orlansmoran.com

UNITED STATES BANKRUPTCY COURT
EASTERN DIVISION, DISTRICT OF MASSACHUSETTS

| IN RE | |
|---|---|
| Alexander V. Brown | Chapter 13<br>Case No. 07-12746-JNF |
| Debtor | |

MEMORANDUM OF LAW IN SUPPORT OF CONFIRMATION AND IN RESPONSE TO OBJECTION TO CONFIRMATION FILED BY DEUTSCHE BANK

IN SUPPORT of confirmation of his third Amended Plan and in response to the objection to confirmation raised by Deutsche Bank (hereinafter "Deutsche"), the debtor states as follows:

ARGUMENT

The debtor in this case (hereinafter "Brown" or "the debtor") recently filed an amended chapter 13 plan which provided for the claim of Deutsche Bank by modifying the claim pursuant to §1322(b)(2). Deutsche has objected to confirmation, alleging *inter alia* that under §1325(a)(5)(B)(iii), the debtor must provide for payment of the claim in equal monthly installments and that balloon payments are no longer permissible. For the following reasons, the objection lacks merit and should be overruled.

The principles that guide the court in statutory interpretation are well defined. "Statutory construction, however, is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme--because the same terminology is used elsewhere in a context that makes its meaning clear …" United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed. 2d 740 (1988). In the statutes that it enacts, Congress is presumed to say what it means and mean what it says. Consequently, if the words of a statute are unambiguous, the Court need go no further and need not resort to legislative history. Connecticut Nat. Bank v. Germain, 503 US 249, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992).

Much of the 2005 amendments to the Bankruptcy Code, however, are far from clear. In analyzing §362(c)(3)(A), one court referred to the amendments as abounding in "head-scratching opportunities … for both attorneys and judges alike." In re Paschal, 337 BR 274 (Bkrtcy. E.D.N.C. 2006). While §1325(a)(5)(B)(iii)(I) may seem straightforward, its interpretation has generated a considerable variety of decisions. *See* In re Melillo, 385 BR 476 (Bkrtcy.D.Mass. 2008) (collecting cases). Section 1325 requires the court to confirm a plan if the plan meets certain requirements. The subsection at issue provides as follows:

(iii) if--

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts;

Recalling that statutory interpretation is a "holistic endeavor", Timbers of Inwood, *supra*, it is necessary to view this subsection in the overall context of chapter 13. Prior to confirmation, only the debtor may file a plan; the trustee, creditors and the court are confined to determining whether the plan complies with the mandatory and discretionary provisions of chapter 13. In re Muessel, 292 BR 712 (1st Cir. BAP 2003). With respect to secured claims, a plan may be confirmed if one of three conditions is satisfied: 1) the creditor accepts the plan; 2) the debtor surrenders the collateral; 3) or the debtor invokes the so-called "cram down" power[2]. §1325(a)(5)(A); Associates Commercial Corp. v. Rash, 520 US 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). At least one court has overruled a trustee's objection to confirmation when the secured creditor did not object to its treatment under the plan, when that treatment was arguably in conflict with §1325(a)(5)(B)(iii), construing the creditor's silence as assent to the treatment. In re Schultz, 363 BR 902 (Bkrtcy.E.D.Wisc. 2007). *Contra* Melillo, *supra* (denying confirmation even in the absence of an objection).

Being relatively short, interpretation of the subsection need not involve tortuous parsing. It can be divided easily into two parts:

1) if property to be distributed pursuant to this subsection is in the form of periodic payments
2) then the payments must be in equal monthly amounts.

Most, if not all, of the case law that has interpreted this section has focused on the second part, i.e., the requirement for equal monthly amounts, and overlooked the first part. Properly understood, the requirement for equal monthly amounts applies only if the plan provides for property to be distributed in the form of periodic amounts. The Melillo court understood this: "First, I understand 11 U.S.C. § 1325(a)(5)(B)(iii)(I) to require that a plan providing for periodic payments to a secured creditor have payments in an equal amounts *from the time they begin until the time they cease.*" 2008 WL 987095 at *3 (emphasis added). *See also* footnote 22 ("I note that 11 U.S.C. § 1325(a)(5)(B)(iii)(I) applies to payments made to secured creditors and not plan payments.")

Whether the sub-section applies, therefore, depends on what the plan provides. Given that prior to confirmation only the debtor may propose a plan, Muessel, *supra*, what the plan provides is solely within the purview of the debtor. If a plan does *not* provide for periodic payments to a creditor, then the requirement of payment to secured creditors in equal monthly

---

[2] The court's phrasing is somewhat unfortunate because it overlooks the "cure and maintain" provisions of §1322(b)(5), which is a fourth basis for confirming a plan, although that is not at issue in this case.

amounts should not apply. The case of In re Davis, 343 BR 326 (Bkrtcy.M.D.Fla. 2006), illustrates the point. In that case, the plan explicitly provided that the secured creditor would be paid $0.00 in months 1 – 10, and $122.23 in months 11 – 57. The court overruled the creditor's objections and confirmed the plan, finding "that equal monthly payments are not required as the claim at issue is one in which arrears on long term debt are being cured." While the Melillo court disagreed with that reasoning, it seems likely that the *result* would be the same, since the provisions in the Davis plan *do* provide for equal monthly amounts, once they begin in month 11; nothing in the statute requires the distributions to begin in the first month, as the Melillo court recognized (see the italicized portion of the quotation in the previous paragraph). *See also* In re DeSardi, 340 BR 790 (Bkrtcy.S.D.Tex. 2006). In other words, if the plan in Davis had provided for the secured creditor to receive (for the sake of argument) $75 in the first year, $125 in the second year, and $150 in the third and subsequent years, such a provision would be contrary to the statute and prevent the plan from being confirmed.

   Section 1322(a)(4) and (11) permits a Chapter 13 Plan to contain directions to the trustee about the timing and sequence of distributions, and the plan may state the amount to be paid to a creditor. *Cf.* In re Fili, 257 BR 370 (1st Cir. BAP 2001)[3]. Section 1325(a)(5)(B)(iii) does not *require* a debtor to state the amount that the trustee is to distribute to a secured creditor on a periodic basis, In re Erwin, 376 BR 897 (Bkrtcy.C.D.Ill. 2007), and such provisions are uncommon in Massachusetts[4]. While it is true that §1325 generally states that certain provisions are mandatory, §1325(a)(5)(B)(iii) is phrased as an "if – then" statement, meaning that if a debtor chooses to include a certain plan provision, then the mandatory *result* has been decided by Congress. As to the specific sub-section at issue in this case, Congress has stated that if - and only if - a debtor chooses to include a provision explicitly requiring the trustee to make distributions in a specific amount to a secured creditor, the distributions must be in equal monthly amounts once they begin. Given that the BAPCPA amendments are generally viewed as limiting judicial discretion in various areas, In re Slusher, 359 BR 290 fn. 15 (Bkrtcy.D. Nev. 2007), together with the limitation on who may propose a plan prior to confirmation, it is not unreasonable nor irrational to interpret the statute to give a *debtor* discretion to choose whether to include a provision calling for specific amounts to be distributed to a secured creditor, but cabining that discretion within a requirement of equal monthly amounts if the debtor exercises that discretion, and requiring the court to confirm a plan if the debtor properly exercises her discretion, regardless of the creditor's views.

   Interpreting the new statute as prohibiting balloon payment plans also would have the

---

[3] The court should also take judicial notice of the fact that the form plan in this district requires the debtor to state, explicitly, the total amount of a secured creditor's claim, as well as the numerous objections to confirmation routinely filed by secured creditors when the amount stated in a plan allegedly is incorrect.

[4] Stating the total amount of a secured creditor's claim is not the same thing as stating the amount to be distributed on a periodic basis. It is the "periodic" amount that invokes the statute.

effect of rendering the "cram down" option a practical nullity because few, if any, debtors would have the financial wherewithal to pay a secured claim in equal monthly amounts within the maximum five years of a chapter 13 plan.  One section of a statute should not be interpreted in a way that renders another section a practical nullity or theoretical absurdity.  Timbers of Inwood, *supra*.  That is especially true as regards the BAPCPA amendments, because in the so-called "hanging paragraph" following §1325(a)(9), it is clear that Congress knew how to restrict a debtor's ability to "cram down", or bifurcate, a claim.  *See* In re Bethoney, 384 BR 24 (Bkrtcy.D.Mass. 2008).  There is no indication, nor any reason to infer, that Congress intended to further restrict that ability by prohibiting balloon payment plans.

The plan in this case contains no provision requiring the trustee to make periodic distributions to Deutsche in any specific amount; in fact, the plan expressly disavows any such intent; it merely state the total amount to be distributed by the trustee.  The plan is entirely consistent with pre-BAPCPA practice; the fact that it contains a balloon payment provision is not determinative of feasibility for confirmation purposes, In re Fantasia, 211 BR 420 (1st Cir. BAP 1997), and the language in the plan showing how the claim was calculated does not require that the trustee make periodic payments.  There is no reason to believe that Congress intended for §1325(a)(5)(B)(iii)(I) to change the well-established prior practice of balloon payments.

> When Congress amends the bankruptcy laws, it does not write "on a clean slate." Furthermore, this Court has been reluctant to accept arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

Dewsnup v. Timm, 502 US 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).  A search of the legislative history regarding the sub-section at issue does not indicate any discussion in Congress whatsoever about balloon payment plans (although it is certainly possible that such discussion was overlooked).  Thus interpreting §1325(a)(5)(B)(iii) in a manner consistent with prior practice is the appropriate rule of construction to follow in this case.

*[balance of this page intentionally left blank]*

<u>CONCLUSION</u>

The plan in this case does not conflict with §1325(a)(5)(B)(iii)(I) because it contains no provision directing the chapter 13 trustee to make distributions to a secured creditor via periodic payments. The plan payment is not a "periodic payment", and the plan expressly affords the trustee discretion about distributions.

Accordingly, the debtor requests that the Court overrule the objection and confirm the plan

June 26, 2008

                                           Respectfully submitted,
                                           Alexander V. Brown,
                                           By his attorney,


                                           /s/           *David G. Baker*
                                           David G. Baker, Esq.
                                           236 Huntington Avenue, Ste. 302
                                           Boston, MA  02115
                                           617-340-3680
                                           BBO# 634889