Loan Number: 0100244078 - 9602

# REDUCED PAYMENT ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

July 14, 2006         White Plains         NY
[Date]                [City]               [State]

31 DOWNER AVENUE, DORCHESTER, MA 02125
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $336,000.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Argent Mortgage Company, LLC.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 7.150%. This interest rate I will pay may change in accordance with Section 4 of this Note. The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3. PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on September 1, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on August 1, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make payments at: 505 City Parkway West, Suite 100, Orange, CA 92868
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 2,124.72 based upon a fully amortizing 40 year repayment schedule in effect for the first ten years of the term of this Note. This amount may change as described in Sections 3 (C) and 4 of this Note.

(C) Re-Amortization/Change in Payment
On September 1, 2016 the outstanding principal balance will be re-amortized so that the entire principal balance will be repaid on the Maturity Date. This will result in an increase in my monthly payment. This new monthly payment amount may change due to adjustments for interest changes as set forth in Section 4 of this Note. The Note Holder will notify me prior to the date of any change in monthly payment.

(D) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates
The interest rate I will pay may change on the first day of August, 2009, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."
If at any point in time the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding six percentage point(s) (6.000%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percent (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance that I am expected to owe at the Change Date at my new interest rate in substantially equal payments in accordance with the amortization provisions set forth in Sections 3(B) and 3(C) of this Note. The result of this calculation will be the new amount of my monthly payment.

1 of 3

Initials: ___

201-1MA RED (Rev. 11/05)                                                07/14/2006 6:58:28 AM



Bk: 43152 Pg: 234 Doc: AST
Page: 1 of 1  02/26/2008 02:03 PM

Attested hereto
Francis M. Roache
Register of Deeds

31 Downer Ave., Dorchester

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, Argent Mortgage Company, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS* TO:

**Deutsche Bank National Trust Company, as Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2006-M3 under the pooling and servicing agreement dated as of September 1, 2006.**

**Whose address is: 1761 East Street, Andrews Place, Santa Ana, CA 92705**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE DATED July 14, 2006
EXECUTED BY:     Alexander Brown

Said Mortgage Is Recorded In The State Of Massachusetts In Suffolk County Registry Of Deeds Book 40001, Page 80.

LEGAL DESCRIPTION AS DESCRIBED ON MORTGAGE REFERRED TO HEREIN

Property Address: 31 Downer Avenue, Dorchester, MA  02125

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE/MORTGAGE.

*The effective date of this assignment is July 23, 2007.

**DATED:** _____     Argent Mortgage Company by Citi Residential Lending Inc.
                                As Attorney in Fact

**STATE OF:** California
**COUNTY OF:** San Bernardino     **BY:** _____
                                  Tamara Price-Vice President

ON  2/20/8  BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC
PERSONALLY APPEARED Tamara Price-Vice President of Citi Residential Lending Inc. as Attorney in fact for Argent Mortgage Company PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED IN THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT, IT BEING THEIR FREE ACT AND DEED.

WITNESS MY HAND AND OFFICIAL SEAL:

SIGNATURE: _____
MY COMMISSION EXPIRES: _____

C. YOUNG
Commission # 1639640
Notary Public - California
Orange County
My Comm. Expires Feb 18, 2010

2008 00052594

Attested hereto

*Juancia m. Roache*
Francis M. Roache
Register of Deeds

07-5936B

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, Argent Mortgage Company, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS* TO:

**Ameriquest Funding II, LLC.**

**Whose address is: 505 City Parkway West, Suite 100, Orange, CA 92868**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE DATED July 14, 2006
EXECUTED BY:    Alexander Brown

Said Mortgage Is Recorded In The State Of Massachusetts In Suffolk County Registry Of Deeds Book 40001, Page 103.

LEGAL DESCRIPTION AS DESCRIBED ON MORTGAGE REFERRED TO HEREIN

Property Address: 31 Downer Avenue, Dorchester, MA 02125

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE/MORTGAGE.

*The effective date of this assignment is July 24, 2007.

**DATED:** _____    Argent Mortgage Company by Citi Residential Lending Inc.

**STATE OF:** California
**COUNTY OF:** San Bernardino    **BY:** _____
Tamara Price-Vice President

ON __2/20/8__ BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC PERSONALLY APPEARED Tamara Price-Vice President of Citi Residential Lending Inc. as Attorney in fact for Argent Mortgage Company PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED IN THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT, IT BEING THEIR FREE ACT AND DEED.

WITNESS MY HAND AND OFFICIAL SEAL:
SIGNATURE: _____
MY COMMISSION EXPIRES: _____

C. YOUNG
Commission # 1639640
Notary Public - California
Orange County
My Comm. Expires Feb 18, 2010

[handwritten margin note: 31 Downer Avenue Dorchester]



Bk: 43152 Pg: 235   Doc: AST
Page: 1 of 1   02/26/2008 02:06 PM



07-5936B

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, Argent Mortgage Company, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFERS* TO:

**Ameriquest Funding II, LLC.**

**Whose address is: 505 City Parkway West, Suite 100, Orange, CA 92868**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN MORTGAGE DATED July 14, 2006
EXECUTED BY:      Alexander Brown

Said Mortgage Is Recorded In The State Of Massachusetts In Suffolk County Registry Of Deeds Book 40001, Page 103.

LEGAL DESCRIPTION AS DESCRIBED ON MORTGAGE REFERRED TO HEREIN

Property Address: 31 Downer Avenue, Dorchester, MA 02125

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE/MORTGAGE.

*The effective date of this assignment is July 24, 2007.

**DATED:** _____         Argent Mortgage Company by Citi Residential Lending Inc.

**STATE OF:** California

**COUNTY OF:** San Bernardino       **BY:** _____
                                          Tamara Price-Vice President

**ON** __2/20/8__ BEFORE ME, THE UNDERSIGNED NOTARY PUBLIC PERSONALLY APPEARED Tamara Price-Vice President of Citi Residential Lending Inc. as Attorney in fact for Argent Mortgage Company PERSONALLY KNOWN TO ME (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON(S) WHOSE NAME(S) IS/ARE SUBSCRIBED IN THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE/SHE/THEY EXECUTED THE SAME IN HIS/HER/THEIR AUTHORIZED CAPACITY(IES), AND THAT BY HIS/HER/THEIR SIGNATURE(S) ON THE INSTRUMENT THE PERSON(S), OR THE ENTITY UPON BEHALF OF WHICH THE PERSON(S) ACTED, EXECUTED THE INSTRUMENT, IT BEING THEIR FREE ACT AND DEED.

WITNESS MY HAND AND OFFICIAL SEAL:

SIGNATURE: _____

MY COMMISSION EXPIRES: _____

C. YOUNG
Commission # 1639640
Notary Public - California
Orange County
My Comm. Expires Feb 18, 2010

*(handwritten margin note: By Power Att Power of Attorney)*

IN THE CIRCUIT COURT, SEVENTH JUDICIAL CIRCUIT, IN AND FOR ST. JOHNS COUNTY, FLORIDA.

CASE NO.: CA-2007-0114
DIVISION: 55

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF AMERIQUEST MORTGAGE SECURITIES, INC., ASSET-BACKED PASS THROUGH CERTIFICATES, SERIES 2004-R7, UNDER THE POOLING AND SERVICING AGREEMENT DATED AS OF JULY 1, 2004, WITHOUT RECOURSE,

      Plaintiff,

vs.

JAMES W. YOUNG, et al,

   Defendant(s).

STATE OF FLORIDA )
COUNTY OF ST. JOHNS )

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

DEPOSITION OF TAMARA PRICE

DATE TAKEN: April 21, 2008
TIME: 1:15 p.m. until 2:38 P.M.
PLACE: Offices of Coastal Court Reporters, LLC
3940 Lewis Speedway, Suite 2102
St. Augustine, Florida 32084
REPORTED BY: Carman L. Gaetanos, FPR
Court Reporter & Notary Public

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

COASTAL COURT REPORTERS, LLC
3940 LEWIS SPEEDWAY, SUITE 2102
ST. AUGUSTINE, FLORIDA 32084
OFFICE: (904) 824-3525; FAX: (904) 824-2525

COASTAL COURT REPORTERS, LLC

---

APPEARANCES:

WILLIAM P. HELLER, ESQUIRE
  Akerman Senterfitt
  Las Olas Centre II, Suite 1600
  350 East Las Olas Boulevard
  Fort Lauderdale, Florida 33301-2229
  -and-
CELIA CHAPMAN FALZONE, ESQUIRE
  Akerman Senterfitt
  50 North Laura Street, Suite 250
  Jacksonville, Florida 32202-2646
  appearing on behalf of the Plaintiff.

JAMES A. KOWALSKI, JR., ESQUIRE
  Law Offices of James A. Kowalski, Jr., PL
  12627 San Jose Boulevard, Suite 203
  Jacksonville, Florida 32223
  appearing on behalf of the Defendant.

ALSO PRESENT:

Catherine Pacheco

COASTAL COURT REPORTERS, LLC

---

INDEX

| WITNESS | PAGE |
|---|---|
| TAMARA PRICE | |
|   Direct Examination by Mr. Kowalski | 4 |
|   Cross Examination by Mr. Heller | 52 |
| REPORTER'S DEPOSITION CERTIFICATE | 56 |
| ERRATA SHEET | 57 |

EXHIBITS

| | |
|---|---|
| Defendant's Exhibit 1 marked for identification | 11 |
| Defendant's Exhibit 2 marked for identification | 14 |
| Defendant's Exhibit 3 marked for identification | 32 |
| Defendant's Exhibit 4 marked for identification | 41 |
| Defendant's Exhibit 5 marked for identification | 46 |

COASTAL COURT REPORTERS, LLC

---

TAMARA PRICE,
having been duly sworn as a witness, testified as follows:

DIRECT EXAMINATION

BY MR. KOWALSKI:

  Q  Ma'am, can you state your full name, please.

  A  Tamara Price.

  Q  And your work address?

  A  I don't know it by heart.

  Q  Is it in a particular building?

  A  It's in Rancho Cucamonga, California.

  Q  Spell Cucamonga for us.

  A  C-U-C-A-M-O-N-G-A.

  Q  Is there a particular name for the complex?

  A  (Shakes head negatively.)

  Q  No?

  A  No.

  Q  Have you ever had your deposition taken before?

  A  No.

  Q  There are some basic ground rules. A deposition is a little bit of an artificial conversation. Normally when you're talking a co-worker or friend, there's a good bit of interruption. They will know where you're going, you will know where

COASTAL COURT REPORTERS, LLC

**Page 5**

1　they're going, they will finish a question, you will
2　start an answer, that type of thing. In a deposition we
3　kind of build in a little bit of a pause, so I will do
4　my best not to question over your answers, and I will
5　ask that you do your best not to interrupt the question
6　and let me get the questions, because the end of the
7　question may change where you thought I was going.
8　　　　Fair enough?
9　A　Fair enough.
10　Q　It is not meant to be an endurance contest.
11　If you need to take a break for any reason, just let us
12　know. If you need to meet with your lawyers, just let
13　us know, and that's perfectly appropriate.
14　　　　Your answers have to be out loud. You can say
15　uh-uh or uh-huh, but I'm going to ask you if it's a yes
16　or no because they end up being typed the same or
17　similarly when they come out in the transcript. So if
18　it's a yes or no, as opposed to saying uh-huh, I am
19　going to say, Is that a yes, and then I am sure pretty
20　quickly you will get into the hang of it and you will
21　answer that way.
22　　　　Fair enough?
23　A　Fair.
24　Q　All right. Who do you work for?
25　A　Citi Residential Lending, Inc.

COASTAL COURT REPORTERS, LLC

**Page 6**

1　Q　One other thing. If you don't understand any
2　part of my question or all of the question, let me know
3　and I will reask it, okay?
4　A　Okay.
5　Q　How long have you worked for Citi Residential
6　Lending, Inc.?
7　A　Ten and a half years.
8　Q　Now, were they known as something else not too
9　long ago, or have you worked for an entity known as Citi
10　Residential that whole time?
11　A　No. I worked for AMC Mortgage Services before
12　Citi.
13　Q　When did AMC Mortgage Services become Citi
14　Residential Lending, Inc.?
15　　　　MR. HELLER: Object to the form.
16　BY MR. KOWALSKI:
17　Q　Did Citi Residential -- I'm sorry. Did AMC
18　Mortgages Services become Citi Residential Lending,
19　Inc.?
20　A　No.
21　Q　Okay. Walk me through your employment then.
22　How long have you worked for the entity that is known as
23　Citi Residential Lending, Inc.?
24　A　Ten and a half years.
25　Q　And during that ten and half year period, it's

COASTAL COURT REPORTERS, LLC

**Page 7**

1　always been known as Citi Residential Lending, Inc.?
2　A　No.
3　Q　Okay. What name changes have occurred during
4　the ten and a half years, if you know?
5　A　It's not -- the name change is what I'm having
6　trouble with, the way you're terming it.
7　Q　What are you having trouble with?
8　A　Well, AMC, as employees we became Citi
9　Residential, how that happened in the -- because we're
10　not formally known as AMC.
11　Q　Right, I'm not asking --
12　A　We're just Citi. So that's why I say I'm ten
13　and a half years because it all became one time zone.
14　Q　Okay. And I'm not asking with the corporate
15　mergers or which entity was known as this as far as the
16　purchase and sales of the corporations are concerned.
17　I'm just asking what you know in terms of the name on
18　the building you walk into and the name on the paycheck
19　you get every couple of weeks.
20　A　It's Citi Residential Lending, Inc.
21　Q　And how long has it been Citi Residential
22　Lending, Inc.?
23　A　Since October 1st, 2007.
24　Q　And then before that, you were getting your
25　paychecks from AMC Mortgage Services?

COASTAL COURT REPORTERS, LLC

**Page 8**

1　A　Right.
2　Q　How long had your paychecks read, AMC Mortgage
3　Services, prior to October 1 of 2007?
4　A　I believe it was January, 2006.
5　Q　And then what was the name of the entity you
6　worked for before January 2006?
7　A　Ameriquest Mortgage Company.
8　Q　And was it Ameriquest Mortgage Company for the
9　remaining roughly eight years prior to that?
10　A　Yes.
11　Q　What is your job title for Citi at this
12　present time?
13　A　Assistant foreclosure manager.
14　Q　And tell me what that means. What are your
15　job duties?
16　A　To assist the foreclosure manager in the
17　day-to-day running of the foreclosure department and
18　foreclosure support department.
19　Q　Who is the foreclosure manager you assist?
20　A　Rose Lara.
21　Q　Spell that last name for us.
22　A　L-A-R-A.
23　Q　It's pronounced Lara?
24　A　Yes.
25　Q　And how long has Rose Lara been the

COASTAL COURT REPORTERS, LLC

**Page 9**

```
1  foreclosure manager?
2      A    I don't know.
3      Q    More than two years?
4      A    Yes.
5      Q    Have you worked for Ms. Lara for more than two
6  years?  In other words have you held --
7      A    I am thinking since January -- I am trying to
8  think back.  I've held this position a year, so.
9      Q    The position --
10     A    January '07 is when I became assistant
11 manager.
12     Q    So January of 2007, you became assistant
13 foreclosure manager and you reported to Ms. Lara?
14     A    Yes.
15     Q    What did you do before January 2007 for
16 Citi/AMC?
17     A    Foreclosure supervisor.
18     Q    And foreclosure supervisor is below assistant
19 foreclosure manager?
20     A    Yes.
21     Q    Now, when you say foreclosure manager with
22 regard to Ms. Lara's title in particular, is she
23 managing foreclosures on behalf of AMC/Citi for the
24 entire country, or do you have a particular area or zone
25 that you focus on?
```

COASTAL COURT REPORTERS, LLC

**Page 10**

```
1           MR. HELLER:  Object to the form.
2  BY MR. KOWALSKI:
3      Q    Go ahead.
4      A    For the country.
5      Q    How many foreclosure managers are there?
6      A    One.
7      Q    Okay.  And I may have interrupted you, but
8  tell me what your job duties are as assistant
9  foreclosure manager.
10     A    Assist in the foreclosure -- with the
11 foreclosure manager in the daily functions of the
12 foreclosure department and the foreclosure support
13 department.
14     Q    What does foreclosure support mean?
15     A    It means that we're producing the necessary
16 functions to keep the foreclosure specialists and the
17 foreclosure attorneys to proceed with the foreclosure
18 process.
19     Q    Where does the foreclosure specialist fit in
20 between foreclosure manager, assistant foreclosure
21 manager, foreclosure supervisor and specialist?  Does it
22 go one, two, three, four just as I've described?
23     A    Yes.
24     Q    Okay.  Let me show you --
25          MR. KOWALSKI:  Do you have some exhibit
```

COASTAL COURT REPORTERS, LLC

**Page 11**

```
1  stickers?
2  (Defendant's Exhibit 1 marked for identification.)
3  BY MR. KOWALSKI:
4      Q    Now, let me show you a Notice of Taking Depo
5  that I've marked as Exhibit 1 and ask you if you've seen
6  that before today?
7      A    No.
8      Q    Have you received -- have you seen any notices
9  of taking your deposition before today?
10     A    No.
11     Q    The notice asks -- let me step back a second.
12 Were you aware that we had been working on taking your
13 deposition since roughly October of 2007?
14          MR. HELLER:  Object to the form.
15          THE WITNESS:  Yes.
16 BY MR. KOWALSKI:
17     Q    All right.  The notice asks that you bring
18 some documents.  And I'm referring specifically to page
19 2 of Exhibit 1, paragraphs 1 and 2 there.  Do you see
20 that?  One, two and three, I'm sorry.
21     A    Yes.
22     Q    It asks that you bring documents reviewed by
23 you in preparation for testifying here today.  It asks
24 that you bring documents reviewed by you in preparation
25 for completion of an affidavit that I'm going to show
```

COASTAL COURT REPORTERS, LLC

**Page 12**

```
1  you in just a minute, and it asks that you bring with
2  you a copy of documents produced in response to request
3  for production.  Do you see that?
4      A    Yes.
5      Q    Have you brought documents with you today?
6      A    No.
7      Q    Can you tell me why?
8      A    My counsel has them.
9           MR. HELLER:  Right.
10          MR. KOWALSKI:  Okay.  That's fair.
11          MR. HELLER:  Let me just -- this is Bill
12 Heller speaking.  Let me step in.  I think time is
13 appropriate.  Mr. Kowalski, it's your deposition.
14 I'm not going to speak on the record, but we did
15 bring documents responsive to the duces tecums.
16 And also as we corresponded about briefly, having
17 substituted as counsel, we've gone back to tried to
18 identify all the documents responsive to both the
19 previously served production request and the
20 deposition notices, and I believe the previously
21 produced documents are also incorporated within
22 some or both of the deposition notices.
23          So on the table here I have a production for
24 you, documents as kept in the ordinary course that
25 are Bates labeled Citi, and that is one of these
```

COASTAL COURT REPORTERS, LLC

**Page 13**

1  red wells that is the Citi supplemental production.
2      I also have for your convenience another set
3  in the white folders, one is for me and one is for you.
4  My top copy said there was four, of the documents
5  produced by previous counsel, the Echevarria firm, so
6  for use at deposition today, we have both the
7  supplemental production and the original production.
8      MR. KOWALSKI: Do you have documents specific
9  to paragraph two of Exhibit 1, documents reviewed
10 by Ms. Price in preparation for completion of her
11 affidavit?
12     MR. HELLER: We have the records of Citi and
13 AMC kept in the ordinary course. You will have to
14 ask the witness those questions.
15     MR. KOWALSKI: Okay.
16 BY MR. KOWALSKI:
17     Q    Let me show you what we will mark as Exhibit
18 2, which is a copy of a Motion for Summary Judgment that
19 was filed March 23, 2007 with a number of documents
20 attached. And for purposes of the exhibit, I just kept
21 everything attached as it was filed.
22     The first document that's attached to Exhibit
23 2 is a document entitled Affidavit as to Amounts Due and
24 Owing. Do you see that?
25     A    Yes.

COASTAL COURT REPORTERS, LLC

**Page 14**

1      (Defendant's Exhibit 2 marked for identification.)
2  BY MR. KOWALSKI:
3      Q    Okay. Let's go through your affidavit which
4  is an exhibit to Exhibit 2, and it identifies you as the
5  vice-president of AMC Mortgage Services. Do you see
6  that at paragraph 2?
7      A    Yes.
8      Q    Are you the vice-president of AMC Mortgage
9  Services as of February 26, 2007?
10     A    For signing authority, yes.
11     Q    Okay. Explain that to me. How are you the
12 vice-president of AMC for purposes of completing an
13 affidavit such as the one we have in front of us?
14     A    AMC provided certain people with certain
15 signing authority, or to conduct businesses, process
16 documents for AMC.
17     Q    And when you say provided certain authority,
18 were you appointed a vice-president of the company for
19 purposes of signing affidavits?
20     A    Yes.
21     Q    And what's the name of the document that
22 appointed you vice-president of AMC Mortgage Services
23 for purposes of the affidavit that's attached to Exhibit
24 2?
25     A    I get confused in the way it's worded. I

COASTAL COURT REPORTERS, LLC

**Page 15**

1  believe it's Certificate of Secretary.
2      Q    Certificate of Secretary?
3      A    Yes.
4      Q    Have you seen the document that appointed you
5  vice-president?
6      A    Yes.
7      Q    Did you bring it here today?
8      A    It's with counsel.
9      MR. KOWALSKI: Is it in the stack?
10     MR. HELLER: Yes.
11     MR. KOWALSKI: Okay.
12 BY MR. KOWALSKI:
13     Q    Okay. If you look at paragraph 2, sentence 3,
14 it says, I am familiar with the books of account and
15 have examined all books, records, and documents kept by
16 AMC Mortgage Services concerning the transactions
17 alleged in the complaint.
18     Do you see that sentence?
19     A    Yes.
20     Q    What books, records and documents did you
21 review in preparation for completing this affidavit?
22 What did you physically look at?
23     A    I did not review any books, records or
24 documents to complete, to sign the affidavit.
25     Q    What did you look at?

COASTAL COURT REPORTERS, LLC

**Page 16**

1      A    I looked at the document itself and signed it.
2      Q    Okay. Do you know what an affidavit is?
3      A    Yes.
4      Q    What is it?
5      A    It's an affidavit to say what is in the
6  document is true.
7      Q    Okay.
8      A    That's my understanding.
9      Q    And that's fair.
10     Do you understand it to be testimony before a
11 court?
12     A    Yes.
13     Q    And do you understand it to be testimony under
14 oath?
15     A    Yes.
16     Q    So when you say, I am familiar with the books
17 of account and have examined all books, records and
18 documents kept by AMC Mortgage Services concerning the
19 transactions alleged in the complaint, why did you not
20 examine all books, records and documents kept by AMC
21 Mortgage Services?
22     A    I didn't examine them because we have
23 processes in place to where certain departments and
24 business units prepare functions or sections of the
25 document itself. And I am familiar with those processes

COASTAL COURT REPORTERS, LLC

**Page 17**

1  and with the checks and balances of what they do to come
2  up with the figures, and so I am familiar with the
3  process.
4     Q   Did you examine anything at all other than the
5  affidavit attached as part of Exhibit 2 in order to
6  complete the affidavit?
7     A   No.
8     Q   The affidavit sentence where you say, I am
9  familiar with the books of account and have examined all
10 books, records and documents, does that say anything
11 like that, what you just said in terms of, I'm familiar
12 with the processes and I'm familiar with how this
13 affidavit is created, but I didn't read anything in
14 support of this affidavit?
15       MR. HELLER:   Object to the form.
16       THE WITNESS:   Can you rephrase that. I don't
17   understand your question.
18 BY MR. KOWALSKI:
19    Q   Okay. You indicated a moment ago that you're
20 familiar with the processes of how an affidavit such as
21 this is created, correct?
22    A   Correct.
23    Q   But that you did not review anything at all in
24 preparation for completing the affidavit, correct?
25    A   Correct.

COASTAL COURT REPORTERS, LLC

**Page 18**

1     Q   Okay. So why doesn't the affidavit say, I am
2  familiar with the processes, but I didn't read anything?
3  Why doesn't it say that as opposed to what it says,
4  which is that you read a number of documents?
5        MR. HELLER:   Object to the form.
6        THE WITNESS:   I don't know why it doesn't say
7    that.
8  BY MR. KOWALSKI:
9     Q   Who prepared the affidavit as to amounts due
10 and owing that you signed on February 26, 2007?
11    A   Our foreclosure counsel.
12    Q   And how was it transmitted to you?
13    A   Through e-mail.
14    Q   As an e-mail attachment?
15    A   Yes.
16    Q   And then you printed it out, correct?
17    A   Correct.
18    Q   And then what happens?
19    A   Well, I want to phrase, I don't personally
20 print it out. I have a department that does that, and
21 then it gets processed and my -- it gets presented to me
22 in a package to sign.
23    Q   Okay. With other affidavits or with other
24 documents relating to this case?
25    A   It could be other documents, different types

COASTAL COURT REPORTERS, LLC

**Page 19**

1  of documents.
2     Q   It is presented to you as a packet for
3  signature?
4     A   Yes.
5     Q   Does that happen several times a day typically
6  or just once a day?
7     A   Several times a day.
8     Q   And in that packet would be an affidavit such
9  as this, it may be other documents relating to this case
10 or it may be other affidavits or other documents
11 relating to other cases?
12    A   Yes.
13       MR. HELLER:   Object to the form.
14       Excuse me, you've got to give me an
15   opportunity to lodge an objection.
16 BY MR. KOWALSKI:
17    Q   Is that correct?
18       MR. HELLER:   Object to the form.
19       THE WITNESS:   Yes.
20 BY MR. KOWALSKI:
21    Q   Where was Ms. Tolliver, the notary, when you
22 signed this affidavit? Where was he physically in
23 relation to you?
24    A   He is in the same office.
25    Q   In the same office room like we are all

COASTAL COURT REPORTERS, LLC

**Page 20**

1  sitting here today, or in a different part of a
2  building?
3     A   Same floor.
4     Q   Is he physically close to you? In other
5  words, did Mr. Tolliver see you sign the affidavit in
6  front of you?
7     A   No.
8     Q   He was in a different part of the same floor?
9     A   Yes.
10    Q   And do you know whether Mr. Tolliver's notary
11 stamp was affixed the same day you signed the affidavit?
12 Do you know one way or the other?
13    A   No, I do not.
14    Q   Is the affidavit and the other documents that
15 are presented to you for signing several times a day,
16 are those routed through a notary department after they
17 leave your desk?
18       MR. HELLER:   Object to the form.
19       THE WITNESS:   No.
20 BY MR. KOWALSKI:
21    Q   How would an affidavit such as this physically
22 get from your desk where it's presented to you to sign
23 to Mr. Tolliver's desk where it's presented to him to
24 notarize?
25       MR. HELLER:   Object to the form.

COASTAL COURT REPORTERS, LLC

21

1  THE WITNESS: The department that does the
2  documents picks up the signed documents and then
3  presents them to the notaries.
4  BY MR. KOWALSKI:
5      Q   What's the name of the document -- I'm sorry.
6  What's the name of the department that is handling these
7  document movements that you've describe?
8      A   Foreclosure support mail documents team.
9      Q   And I take it the "mail" is M-A-I-L?
10     A   Yes.
11     Q   So the foreclosure -- does the foreclosure
12 support mail documents team present the set of documents
13 to you in the first place?
14     A   Yes.
15     Q   And then they move it to wherever it goes
16 next, and if it's a notary that's next, they move it to
17 the notary department?
18     A   Yes.
19     Q   In other words, there are some documents that
20 I'm assuming you sign that don't require notarization,
21 and the mail documents team would move it to wherever
22 their next step would be?
23     A   Yes.
24     Q   The next sentence in paragraph 2 of your
25 affidavit signed or notarized February 26, 2007 states,

COASTAL COURT REPORTERS, LLC

22

1  All of these books, records and documents are kept by
2  AMC Mortgage Services in the regular course of its
3  business as servicer of the loan transaction and are
4  made at or near the time by, and from information
5  transmitted by, persons with personal knowledge of the
6  facts such as your affiant. Do you see that sentence?
7      I am reading the fourth sentence of paragraph
8  2 of the Affidavit as to Amounts Due and Owing.
9      A   Yes.
10     Q   Do you see that now?
11     A   Yes.
12     Q   Okay. Tell me how you know that sentence to
13 be true, in other words, how do you know that books,
14 records and documents are kept in the regular course of
15 business and are made at or near the time by, and from
16 information transmitted by, persons with personal
17 knowledge of the facts such as your affiant, when you
18 did not review any books, records and documents, and had
19 no personal knowledge of the books, records and
20 documents themselves?
21     MR. HELLER: Object to the form.
22     THE WITNESS: There are different departments
23 that support the need for figures to the
24 foreclosure department. They have processes in
25 place that are checks and balances to ensure what

COASTAL COURT REPORTERS, LLC

23

1  they provide is true and accurate, and I rely on
2  that process.
3  BY MR. KOWALSKI:
4      Q   I got that part. But how do you know -- let
5  me just give you an example. The Note, you agree that
6  this loan has a Note and a Mortgage, correct?
7      A   Yes.
8      Q   So there's a Note document somewhere and a
9  Mortgage document somewhere, correct?
10     A   Yes.
11     Q   Okay. You didn't read the Note or the
12 Mortgage in order to complete sentence 3 of paragraph 2,
13 right, we've already covered that?
14     A   Yes.
15     Q   Okay. So how do you know that the Note and
16 Mortgage is kept in the regular course of business as
17 AMC's servicer of the loan transaction? How do you know
18 that to be true?
19     A   It's part of the way the company was -- it's
20 how they service the loans, the familiarity with the way
21 the departments service their parts of the loan. So how
22 do I know, I'm confused with the question. It seems
23 like it's the same question that you've asked me before,
24 that's why I'm giving the same answer as before.
25     Q   Do you know from personal knowledge that the

COASTAL COURT REPORTERS, LLC

24

1  books, records and documents relating to this loan are
2  kept by AMC in the regular course of its business as
3  servicer of the loan transaction, and are made at or
4  near the time by, and from information transmitted by
5  persons with personal knowledge of the facts such as
6  your affiant. Do you know that to be true from personal
7  knowledge?
8      A   Yes.
9      Q   Let's take for example the loan transaction
10 history, where comments and discussions with the
11 borrower are recorded. Okay.
12     A   Okay.
13     Q   How do you know from personal knowledge that
14 the conversations with the borrower are made, are
15 recorded at or near the time of the conversation? How
16 do you know that personally?
17     A   I know that because that's the policy and
18 procedure that is in place.
19     Q   I understand there's a policy and procedure,
20 but how do you know that what's done is made at or near
21 the time by, and from information transmitted by persons
22 with personal knowledge?
23     MR. HELLER: Object to the form.
24 BY MR. KOWALSKI:
25     Q   In other words, how do you know policy is

COASTAL COURT REPORTERS, LLC

25

1  being followed?
2       MR. HELLER: Object to the form.
3       THE WITNESS: I don't know.
4  BY MR. KOWALSKI:
5       Q    Okay. I'm going to skip the next line. The
6  line after that, again on paragraph 2 of Exhibit 2, The
7  books, records and documents which affiant has examined
8  are managed by employees or agents whose duty it is to
9  keep the books accurately and completely.
10      We've already covered the fact that you did
11 not examine any books, records or documents, correct?
12      MR. HELLER: Object to the form.
13 BY MR. KOWALSKI:
14      Q    Is that true or not?
15      A    In relating to signing this document.
16      Q    That's correct.
17      A    Yes.
18      Q    Okay. And in the last sentence of paragraph 3
19 says, Furthermore, affiant has personal knowledge of the
20 matters contained in the books, records and documents
21 kept by AMC Mortgage Services. Do you see that?
22      A    Yes.
23      Q    Is that sentence a true statement?
24      A    Yes, to the point of according to the
25 procedures that I know these departments do and that I

COASTAL COURT REPORTERS, LLC

26

1  rely on their doing their procedures.
2       Q    I'm not asking that question. I'm asking you
3  to read the last sentence of paragraph 2 of Exhibit 2
4  and tell me if the last sentence of paragraph 2 of
5  Exhibit 2 is a true statement?
6       MR. HELLER: Object to the form.
7       THE WITNESS: Yes, it is true.
8  BY MR. KOWALSKI:
9       Q    Okay. It is true that you have personal
10 knowledge of the matters contained in the books, records
11 and documents kept by AMC Mortgage Services?
12      A    Yes.
13      Q    Okay. Then what are the matters contained in
14 the book, records and documents kept by AMC Mortgage
15 Services with regards to this loan to which you just
16 testified you had personal knowledge?
17      A    The system in which this loan is serviced.
18      Q    Not what the sentence says, ma'am. The
19 sentence says that you have personal knowledge of the
20 matters contained in the books, records and documents
21 kept by AMC Mortgage. And I'm asking you what the
22 books, records and documents kept by AMC Mortgage
23 Services with regard to this loan to which you have
24 personal knowledge?
25      MR. HELLER: Object to the form.

COASTAL COURT REPORTERS, LLC

27

1       THE WITNESS: They're the systems that we
2       document and service by which we service the loan,
3       which are the books and records.
4  BY MR. KOWALSKI:
5       Q    Okay.
6       A    I know those systems.
7       Q    You know the systems. I'm not asking you if
8  you know the systems. You've made it clear that you
9  know and rely on the systems. This sentence that we're
10 focusing on says, Furthermore, affiant has personal
11 knowledge of the matters contained in the books, records
12 and documents kept by AMC Mortgage Services. I am not
13 asking you about the system. I am asking the extent of
14 your personal knowledge that you've testified to under
15 oath, and under oath in this affidavit of the matters
16 contained in the books, records and documents kept by
17 AMC Mortgage Services with regard to this loan
18 pertaining to James Young?
19      MR. HELLER: Object to the form.
20      THE WITNESS: I'm sorry. I'm thinking I'm
21      answering your question because I don't understand
22      your question then.
23 BY MR. KOWALSKI:
24      Q    Do you have personal knowledge of any
25 documents relating to Mr. Young?

COASTAL COURT REPORTERS, LLC

28

1       MR. HELLER: Object to the form.
2       THE WITNESS: Yes.
3  BY MR. KOWALSKI:
4       Q    Have you ever read the Note in this case?
5       A    No.
6       Q    Have you ever read the Mortgage in this case?
7       A    No.
8       Q    Have you ever read any documents that pertain
9  to hazard insurance in this case?
10      A    No.
11      Q    Have you ever read the loan transaction
12 history?
13      A    No.
14      Q    Have you ever read the payment history?
15      A    No.
16      Q    Have you ever read any documents of any kind
17 in this case?
18      A    The affidavit.
19      Q    Other than the affidavit that you signed
20 without reviewing anything else?
21      A    No.
22      Q    Okay. Paragraph 3 states that you have
23 personal knowledge of the facts regarding the sums of
24 money which are due and owing to Deutsche Bank National
25 Trust Company, as trustee. Do you see that?

COASTAL COURT REPORTERS, LLC

**Page 29**

A  Yes.
Q  Okay. And again, you did not review any documents relating to sums of money, correct?
A  Correct.
Q  Do you know if Deutsche Bank is owed any money?
A  Yes.
Q  How do you know that?
A  By what the document says.
Q  I know that, but you signed the document saying that you had done some things. Are you saying you know it to be true simply because it was presented to you?
A  No.
Q  Well, how do you know that Deutsche Bank National Bank, as trustee is owed thing?
A  Because of the processes in place with the department that generate all the foreclosure figures for us, and I rely on their integrity and their accuracy.
Q  Do you know if Deutsche Bank owned the Note as of the day this was notarized February, 27, 2007?
A  Yes.
Q  How do you know that?
A  By the transaction of the sale of the loan to them.

COASTAL COURT REPORTERS, LLC

**Page 30**

Q  And what did you review personally with regard to the transaction of the sale of the loan to Deutsche Bank National Trust Company, as trustee?
A  A screen on our system that shows us the date that it happened.
Q  Which is populated by somebody else, correct?
MR. HELLER:  Object to the form.
BY MR. KOWALSKI:
Q  The screen is --
A  I --
Q  Well, let me step back a second. Do you know who provided the information on the screen on your system?
A  No.
Q  Do you have any idea how the information on the screen on your system is created?
A  No.
Q  Do you know who created the information on the screen on your system relating to the date that Deutsche Bank, as trustee bought the loan?
A  No.
Q  Do you know whether the information on the screen on your system was created close to the time that Deutsche Bank, as trustee bought the loan?
A  That's what I've been told.

COASTAL COURT REPORTERS, LLC

**Page 31**

Q  By who?
A  By investor operations.
Q  Who is investor operations?
A  They are the department that processes the reporting to the investors.
Q  Do you know if they populated the screen on your computer that told you the date that Deutsche Bank, as trustee, bought the loan?
A  I do not know that.
Q  Well, how do you know that investor operations talked to the people who wrote the data on your computer screen?
MR. HELLER:  Object to the form.
THE WITNESS:  I don't know.
BY MR. KOWALSKI:
Q  What's the name of the computer screen that has the field containing the date of the purchase?
A  LNTH.
Q  Do you know what LNTH stands for?
A  No.
Q  Do you know if the LNTH screen is part of a larger computer networked screen or set of screens?
MR. HELLER:  Object to the form.
THE WITNESS:  It's part of the Fidelity system.

COASTAL COURT REPORTERS, LLC

**Page 32**

BY MR. KOWALSKI:
Q  Does Citi use or have a name for the Fidelity system that it operates?
A  Yes.
Q  And what is the name?
A  It's Fidelity system or MSP are the terms we use in the office.
Q  Let me show you what I will mark as Exhibit 3 which is a notice that we were provided by prior counsel as part of a notice of filing dated September 26, 2007.
(Defendant's Exhibit 3 marked for identification.)
BY MR. KOWALSKI:
Q  That has an Affidavit as to Amounts Due and Owing attached. Do you see the affidavit that's attached to Exhibit 3?
A  Yes.
Q  And I can go through the same questions, but let me see if I can summarize and you can correct me if I am wrong. This is an affidavit that is Exhibit 3 that is presented to you by foreclosure counsel as an attachment to an e-mail, you read the affidavit and the affidavit only, you signed it as part of a stack of documents that were presented to you by the FC support mail documents team, and it then left your desk to be sent to the notary department; is that correct?

COASTAL COURT REPORTERS, LLC

33

1  MR. HELLER: Object to the form.
2  BY MR. KOWALSKI:
3  Q  Well, since your lawyer objected, let me take
4  you through each sentence of the affidavit again.
5      Let me ask you, was the affidavit that's
6  attached as Exhibit 3, was that affidavit presented to
7  you as an attachment to -- as part of an attachment to
8  an e-mail?
9  A  I believe so.
10 Q  Was it -- did you review any documents in
11 preparation for completing the affidavit that's attached
12 to Exhibit 3?
13 A  No.
14 Q  Was the affidavit that's attached as Exhibit 3
15 presented to you as part of a stack of documents to
16 sign?
17 A  I believe so.
18 Q  Did it then leave your desk to be forwarded
19 over to the notary department?
20 A  Yes. I am -- it's not a department. Their
21 mail docs team has notaries within the team so it's not
22 a department per se.
23 Q  Fair enough. I appreciate that.
24     Paragraph 5 of both affidavits references a
25 reasonable attorney's fee to pay to Echevarria, Codilis

COASTAL COURT REPORTERS, LLC

34

1  & Stawiarski. Do you see that?
2  A  Yes.
3  Q  Are you familiar with the agreement between
4  Deutsche Bank, as trustee and Echevarria, Codilis &
5  Stawiarski?
6  A  No.
7  Q  Do you know whether Deutsche, as trustee,
8  agreed to pay the law firm of Echevarria, Codilis &
9  Stawiarski a flat fee?
10 A  No.
11 Q  You don't know anything about the arrangements
12 at all?
13 A  No.
14 Q  Are there any manuals that you follow as
15 assistant foreclosure manual -- manager, sorry. Are
16 there manuals that you follow as assistant foreclosure
17 manager in instructing you or discussing how to complete
18 the affidavits that we've been talking about today?
19 A  No.
20 Q  What training did you have to prepare you to
21 complete affidavits such as the part of Exhibit 2 and
22 the part of Exhibit 3?
23 A  Really no training, more of a, read the
24 document and I had questions, I would ask the attorney,
25 our foreclosure attorney.

COASTAL COURT REPORTERS, LLC

35

1  Q  Well, you talked about knowing and relying
2  upon the policies of Citi, correct?
3  A  Correct.
4  Q  And relying upon each department to do its
5  individual job so that you could sign an affidavit such
6  as these without reading anything, correct?
7  MR. HELLER: Object to the form.
8  THE WITNESS: Correct.
9  BY MR. KOWALSKI:
10 Q  Okay. Well, tell me how you learned about the
11 policies of these different departments upon which you
12 rely?
13 A  Over the years part of my job at one point was
14 to do the judgment figures, and then over the years, I
15 grew with the evolvement of these different departments
16 that became specialized in doing those functions.
17 Q  Maybe I misunderstood you earlier. I thought
18 you said the affidavits are presented to you by the
19 foreclosure lawyer, correct?
20 A  Through e-mail, yes.
21 Q  Okay. Is it your testimony that there is a
22 department of Citi/AMC that provides the information in
23 the affidavit to the foreclosure lawyer?
24 MR. HELLER: Object to the form.
25 THE WITNESS: Only the foreclosure, only the

COASTAL COURT REPORTERS, LLC

36

1  figures.
2  BY MR. KOWALSKI:
3  Q  What's the name of the department that
4  provides the figures to the foreclosure lawyer?
5  A  FSS, I believe it's called FSS shared services
6  at this point.
7  Q  And what does FSS stand for, if you know?
8  A  Financial shared services.
9  Q  Okay. So the SS stands for shared services?
10 A  Yes.
11 Q  So financial shared services.
12     Okay. Did you at one point work for financial
13 shared services?
14 A  No.
15 Q  Again, I misunderstood you because I thought
16 you just told me you used to work for the department
17 that created the figures for affidavits such as what
18 we've been discussing.
19 A  It is -- what it was is that I used to do them
20 myself as a specialist, and as the company and
21 department grew, then this department became financial
22 shared services, a specialized area. So I didn't
23 actually ever work for that department, but I knew the
24 procedures, how to get the figures by doing them myself
25 when I was a specialist.

COASTAL COURT REPORTERS, LLC

**Page 38**

```
1    Q    And when were you a specialist?
2    A    When I first started at Ameriquest.
3    Q    Roughly ten years ago?
4    A    Yes.
5    Q    How long were you a specialist, just roughly?
6    A    Roughly a year.
7    Q    Do you know whether any of the protocols
8   changed after you left whatever department it was called
9   nine years ago that later became FSS?
10   A    That department wasn't formed nine years ago,
11  that's what I'm saying. It formed three years, maybe
12  two, two, three years ago.
13   Q    Okay. And what are the policies and
14  procedures of FSS?
15   A    That's pretty broad. I mean, I'm not sure
16  what you're saying.
17   Q    Well, let me ask it another way. Are you
18  familiar with the policy and procedures of FSS?
19   A    Somewhat.
20   Q    And how?
21   A    By the standard in which getting the figures
22  are generated and where they get them from has not
23  changed.
24   Q    And where do the figures come from?
25   A    The MSP Fidelity System.
```

COASTAL COURT REPORTERS, LLC

**Page 38 (right column)**

```
1    Q    Who populates the MSP Fidelity System?
2    A    I don't know that.
3    Q    Well, who creates the arithmetic that goes
4   into FSS?
5        MR. HELLER:  Object to the form.
6        THE WITNESS:  I don't know. I don't know
7    that.
8   BY MR. KOWALSKI:
9    Q    Do you know anything about it at all?
10   A    Not the mechanics of it.
11   Q    Do you know where the numbers come from?
12   A    I would assume from the different departments
13  that generate the data.
14   Q    Well, I know you would assume that, but do you
15  know that at all to be true?
16   A    Yes.
17   Q    How?
18   A    By conversations with people that work in that
19  department.
20   Q    Tell us about that.
21       MR. HELLER:  Object to the form.
22       THE WITNESS:  The cashiering had that they
23   posted payments, correspondence through the -- mail
24   that they posted the payments. Again, I'm assuming
25   that they put the figures in.
```

COASTAL COURT REPORTERS, LLC

**Page 39**

```
1   BY MR. KOWALSKI:
2    Q    Okay. So cashiering puts the figures in when
3   the payment is received, correct?
4    A    Right.
5    Q    Who has the decision to make as to whether a
6   payment is allocated to suspense as opposed to principal
7   and interest?
8    A    I don't know.
9    Q    You don't know. So who has the responsibility
10  of determining whether a loan is in arrears?
11   A    I don't know that.
12   Q    Do you know anything at all about how the
13  figures are created or generated or documented that then
14  gets sent to FSS?
15   A    No.
16   Q    And then FSS sends it to the lawyer, as far as
17  you know, correct?
18   A    Yes. Not as far as I know, they send it
19  through our Lenstar system.
20   Q    Lenstar.
21   A    L-E-N-S-T-A-R.
22   Q    Okay. So you have no idea how the figures are
23  created, but you know they are then sent by FFS through
24  Lenstar to the lawyer; is that fair?
25   A    No.
```

COASTAL COURT REPORTERS, LLC

**Page 40**

```
1        MR. HELLER:  Object the form.
2   BY MR. KOWALSKI:
3    Q    What's wrong with that statement?
4    A    To say I don't know how they're created,
5   they're in the system and the system -- the figures are
6   there for the FSS team to take and put in a format and
7   present to the attorney.
8    Q    You're not familiar with how they're created
9   in the system though; is that fair?
10   A    Initially, yes.
11   Q    That's correct in order words?
12   A    Yes.
13   Q    And then the attorney creates the affidavit
14  and the affidavit gets sent to you?
15   A    Yes.
16   Q    Do you know whether or not the attorney is
17  privy to the FSS system or to the cashiering system in
18  order to check the truth of the financial information?
19       MR. HELLER:  Object to the form.
20       THE WITNESS:  Can you ask the first part of
21   the question again, Do I know --
22  BY MR. KOWALSKI:
23   Q    Do you know if the lawyer is privy to or has
24  access to either the FSS system or the cashiering system
25  in order to check the truth of the financial information
```

COASTAL COURT REPORTERS, LLC

41

1  in your affidavit?
2        MR. HELLER:  Object to the form.
3        THE WITNESS:  Yes.
4  BY MR. KOWALSKI:
5    Q    And what is the answer?
6    A    No.
7    Q    Does anybody check the truth of the financial
8  information in your affidavit?
9    A    I don't know.
10       MR. KOWALSKI:  Am I on 5?
11       THE REPORTER:  I believe 4.
12  (Defendant's Exhibit 4 marked for identification.)
13  BY MR. KOWALSKI:
14   Q    Let me show you what I've marked as Exhibit 4
15  which is a letter we got from Echevarria back in April
16  of '07. And this is a document signed by you, correct?
17   A    Yes.
18   Q    What I'm showing you that we were provided by
19  Echevarria is entitled Assignment of Mortgage, do you
20  see that?
21   A    Yes.
22   Q    What day did you sign Exhibit 4, the document
23  attached to Exhibit 4?
24   A    I don't recall. I don't know.
25   Q    Is there any way for anybody to know? If you

COASTAL COURT REPORTERS, LLC

42

1  look at the bottom of the assignment, it says, In
2  witness whereon, Assignor has executed and delivered
3  this Instrument on blank, 2007, the bottom of this page.
4  See that?
5    A    Yes.
6    Q    No date, right?
7    A    Yes.
8    Q    And then the notary stamp by Mr. Castrejon,
9  C-A-S-T-R-E-J-O-N, says that he notarized this the 30th
10  day of blank, 2007. Do you know whether it was January
11  30th, February -- couldn't have been February 30th, so
12  we know that. We know it wasn't February, right? Do
13  you know if it was January through December except for
14  February of '07?
15       MR. HELLER:  Object to the form.
16       THE WITNESS:  I don't know.
17       MR. HELLER:  Object to the form.
18  BY MR. KOWALSKI:
19   Q    Why would you sign an assignment that doesn't
20  have a date on it?
21   A    The process is for me to sign it, then the
22  notary dates it.
23   Q    I got that part. Is this similar to what we
24  talked about before?
25   A    No.

COASTAL COURT REPORTERS, LLC

43

1    Q    Did you read anything at all before you signed
2  the document that is attached to Exhibit 4?
3    A    Read what?
4    Q    Did you read anything at all? Did you look at
5  anything? Did you review any documents? Did you look
6  at any computer screens? Did you talk to any human on
7  the planet before you signed the document that is
8  attached to Exhibit 4?
9        MR. HELLER:  Object to the form.
10       THE WITNESS:  I reviewed the assignment to
11       make sure that my capacity was correct, that is
12       primarily what I review when I am signing the
13       document.
14  BY MR. KOWALSKI:
15   Q    Your capacity?
16   A    To sign; my title.
17   Q    Okay. So you review to see if it has the word
18  "vice-president"?
19   A    And by the, at that time it was AMC Mortgage
20  Services, as authorized agent.
21   Q    Okay. What do you look at to determine if the
22  AMC Mortgage Services, Inc. as authorized agent is
23  correct?
24   A    I -- I don't understand your question.
25   Q    Well, what are you checking by reading those

COASTAL COURT REPORTERS, LLC

44

1  words?
2    A    That they are spelled correctly, that it says
3  authorized agent and not something else, or it's missing
4  the word authorized agent. I am checking to make sure
5  the full language is there for AMC.
6    Q    Do you review anything else -- let me step
7  back.
8        Do you review anything relating to the
9  purchase of this loan before completing an assignment
10  such as what is attached to Exhibit 4?
11   A    No.
12   Q    Do you review the polling and servicing
13  agreement?
14   A    No.
15   Q    Do you know whether or not the purchase
16  occurred on January 10, 2007, which is the date on the
17  assignment?
18   A    Repeat that. I didn't hear it.
19   Q    Do you review -- well, do you have the ability
20  to read that back?
21       (Question read back by court reporter.)
22       THE WITNESS:  No.
23  BY MR. KOWALSKI:
24   Q    Who would create the Assignment of Mortgage,
25  such as what is attached to Exhibit 4, which department?

COASTAL COURT REPORTERS, LLC

**Page 45**

1  A   Our foreclosure counsel.
2  Q   So the lawyer actually drafts the Assignment?
3  A   Yes.
4  Q   And then it is then sent to FC support mail
5  documents team as an attachment to an e-mail?
6  A   Yes.
7  Q   And then printed and given to you?
8  A   Yes.
9  Q   And then signed and sent back to the FC
10 support mail documents team to be notarized?
11 A   Yes.
12 Q   From just looking at the attachment to Exhibit
13 4, can you tell us anything at all other than it was
14 apparently not February of 2007, can you tell us
15 anything at all as to when the attachment to Exhibit 4
16 was signed?
17     MR. HELLER:  Object to the form.
18     THE WITNESS:  No.
19 BY MR. KOWALSKI:
20 Q   Do you know whether or not the notaries in the
21 mail documents team are required to keep notary logs?
22 A   Yes.
23 Q   Did you review any notary logs before coming
24 here today?
25 A   No.

COASTAL COURT REPORTERS, LLC

**Page 46**

1  Q   Let me show you what I've marked as Exhibit 5
2  which is a Corrective Assignment of Mortgage.  Do you
3  see that?
4  A   Yes.
5  (Defendant's Exhibit 5 marked for identification.)
6  BY MR. KOWALSKI:
7  Q   Okay.  Now, in this one the notary at least
8  wrote the month in.  So we know that R.P. Umali, is that
9  how you pronounce that?
10 A   Yes.
11 Q   U-M-A-L-I, am I reading that right?
12 A   Yes.
13 Q   Who is R.P. Umali?  Do you know if that's a
14 man or a woman?
15 A   It's a woman.  Her name is Rosemary.
16 Q   And her middle initial is P?
17 A   Yes.
18 Q   Ms. Umali notarized this on May 21 of 2007
19 from what it appears?
20 A   Yes.
21 Q   Okay.  You were not physically with Ms. Umali
22 when she notarized it?
23 A   Correct.
24 Q   Okay.  There is a date referenced above your
25 signature.  Do you see that, it says, In witness

COASTAL COURT REPORTERS, LLC

**Page 47**

1  whereof, comma?
2  A   Yes.
3  Q   There is no date there, correct?
4  A   Correct.
5  Q   Do we know when you signed Exhibit 5?  Is
6  there any way to know when you signed Exhibit 5?
7  A   No.
8  Q   Now, you referenced that you check for typos
9  in the title above your name, correct?
10 A   Correct.
11 Q   This says by AMC Mortgage Services as
12 authorized Agent.  Do you see that?
13 A   Yes.
14 Q   The D is missing.
15 A   Yes.
16 Q   Should be authorized agent.
17 A   Yes.
18 Q   But that's not important enough to correct, I
19 take it?
20     MR. HELLER:  Object to the form.
21     THE WITNESS:  Just an oversight.
22 BY MR. KOWALSKI:
23 Q   Well, I know that.  But I'm just following up
24 on your testimony that you were checking for the typing
25 or the label above your name.

COASTAL COURT REPORTERS, LLC

**Page 48**

1  A   Right.
2  Q   Okay.  If it says authorized agent, that would
3  not be something that you would send back to correct?
4     MR. HELLER:  Object to the form.
5     THE WITNESS:  Yes, that would be something
6     that I would send back.  This is an oversight.  I
7     would have corrected that.
8  BY MR. KOWALSKI:
9  Q   Okay.  So this is something you should have
10 sent back to correct?
11 A   Yes.  Well, one of myself or my mail docs
12 team.
13 Q   Who is Eva Gamboa, G-A-M-B-O-A?
14 A   At the time she was in the mail docs
15 department as an associate.
16 Q   And who is Agripa, A-G-R-I-P -- Agripina, I'm
17 sorry, Pyfer, P-Y -- let me finish spelling Agripina,
18 A-G-R-I-P-N-A, Pyfer, P-Y-F-E-R.  Who is that?
19 A   She's an associate in the mail docs team.
20 Q   Would Ms. Gamboa and Ms. Pyfer work with Ms.
21 Umali?
22 A   Yes.
23 Q   So as I'm understanding it then, and correct
24 me if I'm wrong, but Ms. Gamboa and Ms. Pyfer and Ms.
25 Umali are all signing it roughly the same time?

COASTAL COURT REPORTERS, LLC

**Page 49**

1  A  Correct.
2  Q  Which would be a different time than you?
3  A  Correct.
4  Q  Could be a different day, could be a different
5  week as far as you know, correct?
6  A  It's usually just by a day or hours sometimes.
7  Q  Okay. Are there any protocols or manuals or
8  other documents that speak to the policies and
9  procedures to be followed by the mail team?
10  A  Yes.
11  Q  What is the name of the manual?
12  A  It is policy and procedures. It's online
13  policy and procedures for mail docs.
14  Q  Okay.
15  A  Foreclosure, it would be under foreclosure.
16  Foreclosure support is under the foreclosure umbrella.
17  Q  So is there a general foreclosure manual that
18  includes a section for mail docs?
19  A  Yes.
20  Q  And is that what you're talking about?
21  A  Yes.
22  Q  What is the general online foreclosure manual
23  called?
24  A  Foreclosure department.
25  Q  Okay. Do you know when Deutsche Bank, as

COASTAL COURT REPORTERS, LLC

**Page 50**

1  trustee purchased this Note and Mortgage?
2  A  No.
3  Q  Paragraph 4 of Exhibit 2, do you still have
4  that in front of you? It's the first affidavit that we
5  talked about, probably that one right there. Just stay
6  on that page actually.
7     Do you see where it says paragraph 4?
8  A  Yes.
9  Q  Okay. I was going to ask you some questions
10  about what each one of these entries mean, principal,
11  interest per diem, pre-acceleration late charges,
12  property inspections, insurance, appraisal, B.P.O.
13  Suspense, total. Do you know what each of those labels
14  refer to?
15  A  No.
16  Q  Do you know, for example, what the appraisal
17  or whether -- well, let me step back. Do you know from
18  personal knowledge whether an appraisal was done?
19  A  No.
20  Q  What is a B.P.O.?
21  A  It's stands for broker price opinion.
22  Q  What does that mean?
23  A  To my knowledge it's a document that is used
24  to put a value on a piece of property.
25  Q  Do you know if a broker price opinion was done

COASTAL COURT REPORTERS, LLC

**Page 51**

1  in this case?
2  A  No.
3  Q  Did you ever review a broker price opinion
4  that before signing the affidavit that's notarized
5  February 26, 2007?
6  A  No.
7     MR. KOWALSKI: All right. That's all the
8  questions I have.
9     THE WITNESS: I do want to clarify one thing
10  with my year and date that I became foreclosure
11  manager, I believe it was 2006. I'm not real good
12  with timeframes actually. That's when I became
13  promoted. I said 2007, but I believe it was 2006.
14     MR. KOWALSKI: Okay.
15     THE WITNESS: I just wanted to be sure that
16  that was corrected.
17     MR. KOWALSKI: I appreciate that.
18  BY MR. KOWALSKI:
19  Q  So you've been foreclosure manager for about
20  two years and three months, something like that?
21  A  Correct.
22     MR. KOWALSKI: Fair enough. I appreciate it.
23     Do you want to talk to her about reading or
24  waiving?
25     MR. HELLER: I have some questions, but I need

COASTAL COURT REPORTERS, LLC

**Page 52**

1  a restroom break.
2     MR. KOWALSKI: Absolutely.
3     Let's take a quick break.
4     (Break.)
5        CROSS EXAMINATION
6  BY MR. HELLER:
7  Q  Ms. Price, some follow-up questions, please.
8  If I understand your testimony, you sign affidavits as
9  part of your job; is that correct?
10  A  Yes.
11  Q  Are those affidavits that you sign as part of
12  your job generally based on company business records?
13  A  Yes.
14  Q  Is that how it was at AMC?
15  A  Yes.
16  Q  Is that how it is at Citi?
17  A  Yes.
18  Q  Are you familiar with how AMC, or were you
19  familiar with how AMC kept its business records relating
20  to what amounts are owed on mortgage loans that that
21  company serviced?
22  A  Yes.
23  Q  Were those practices that you're referring to
24  that you just said that you were familiar with, were
25  those the routine practices of AMC when it serviced

COASTAL COURT REPORTERS, LLC

Page 53

```
1    loans?
2        A    Yes.
3        Q    Same with questions for Citi. Are you
4    familiar with how Citi keeps records of the amounts owed
5    on mortgage loans it services?
6        A    Yes.
7        Q    Are those the routine practices of Citi?
8        A    Yes.
9        Q    Mr. Kowalski showed you some affidavits during
10   his direct examination this afternoon. When you signed
11   those affidavits, did you believe you were testifying
12   based on business records?
13       A    Yes.
14       Q    Is that generally how the affidavits that you
15   sign are written, based on business records?
16       A    Yes.
17       Q    Do you rely on your foreclosure counsel to
18   prepare the affidavits for you?
19       A    Yes.
20       Q    Do you recall who your foreclosure counsel was
21   in this case?
22       A    No.
23       Q    Mr. Kowalski asked you if I'm not mistaken
24   whether you checked the accuracy of figures before
25   signing an affidavit. My follow-up question is, do you
```

COASTAL COURT REPORTERS, LLC

Page 54

```
1    believe that the routine practice involves -- let me
2    start over. Do you understand based on your experience
3    working with AMC and Citi, that the business practice,
4    the routine practice for generating amounts due on a
5    particular loan is verified in that process?
6        A    Yes.
7        Q    Is that a routine practice? Was that a
8    routine practice at AMC?
9        A    Yes.
10       Q    Is that the routine practice at Citi?
11       A    Yes.
12           MR. HELLER:    That's all I have.
13           MR. KOWALSKI:    No follow up to that.
14           Do you want to read or waive?
15           MR. HELLER:    Read, please.
16   (Witness excused.)
17   (Deposition concluded.)
```

COASTAL COURT REPORTERS, LLC

Page 55

CERTIFICATE OF OATH

STATE OF FLORIDA )
COUNTY OF ST. JOHNS )

I, the undersigned authority, certify that TAMARA PRICE, personally appeared before me and was duly sworn.

WITNESS my hand and official seal this 6th day of May, 2008.

CARMAN L. GAETANOS, COURT REPORTER
Notary Public-State of Florida
Commission No. DD639656
Expires: 6/12/2011

COASTAL COURT REPORTERS, LLC

Page 56

REPORTER'S DEPOSITION CERTIFICATE

STATE OF FLORIDA )
COUNTY OF ST. JOHNS )

I, CARMAN L. GAETANOS, FPR, Court Reporter, do hereby certify that I was authorized to and did stenographically report the deposition of TAMARA PRICE, that a review of the transcript was requested; and that the transcript, pages 1 through 57, is a true and complete record of my stenographic notes.

I further certify that I am not a relative, employee or counsel of any of the parties, nor am I a relative or employee of any of the parties; attorney or counsel connected with the action, nor am I financially interested in the action.

DATED this 6th day of May, 2008.

CARMAN L. GAETANOS
Coastal Court Reporters, LLC

COASTAL COURT REPORTERS, LLC

```
 1                    ERRATA SHEET
 2      DO NOT WRITE ON TRANSCRIPT - ENTER CHANGES HERE
 3      IN RE: DEUTSCHE BANK NATIONAL TRUST COMPANY, et al
                     VS.
 4           JAMES W. YOUNG, et al
 5      CASE NO.: CA-2007-0114
 6      PAGE NO.  LINE NO.   CHANGE        REASON
 7
 8
 9
10
11
12
13
14
15
16
17
18   Under penalties of perjury, I declare that I have
     read my deposition and that it is true and correct
19   subject to any changes in form or substance entered
     here.
20
21   _____
     DATE        TAMARA PRICE
22
     (CLG)
23
24
25
              COASTAL COURT REPORTERS, LLC
```