UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| In Re: | Case Number 07-12746-JNF |
|---|---|
| Alexander V. Brown | Chapter 13 |

MEMORANDUM OF LAW IN SUPPORT OF MOTION FILED BY DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE TO VACATE ORDER ENTERED AS DOCUMENT NO. 171

INTRODUCTION

Now comes Deutsche Bank National Trust Company as Trustee of Ameriquest Mortgage
Securities, Inc. Asset Backed Pass-Through Certificates, Series ARSI 2006-M3 Under the Pooling and
Servicing Agreement Dated as of September 1, 2006 ("Deutsche Bank") and files this Memorandum of
Law in Support of its pending motion to vacate (#171) the previous order of this Court (#136) vacating
an earlier order of this Court to which the Debtor assented granting Deutsche Bank relief to foreclose a
first mortgage held by it on a two-family dwelling not occupied by the Debtor and used by him for
income-producing purposes.  The original order was entered on October 4, 2007, granting Deutsche
Bank relief from the automatic stay as of December 4, 2007 (#46); an amended order was entered on
March 5, 2008 (#77) to correct the registry of deeds book and page reference of the subject mortgage.

BACKGROUND

The Debtor filed the instant petition on May 2, 2007, with his schedules reflecting total secured
claims of $713,869.00, priority claims of $9,960.00 and unsecured claims of less than $2,300.00.  The
secured claims consist of two mortgages held by Sovereign Bank on the Debtor's principal residence and
two mortgages, including Deutsche Bank's first mortgage, encumbering the Debtor's income-producing
property known as 31 Downer Avenue, Dorchester, Massachusetts (the "Rental Property").

The Debtor's initial plan (#17) as well as his First Amended Plan (#25) were cure and maintain
plans with respect to each of the four mortgages.  Schedule I reflects combined average monthly income
of $6,357.00 against total schedule J average monthly expenses of $6,267.00 resulting in monthly net
income of $90.00.  In Schedule J, $5,071.00 is allotted for the four mortgage payments and is said to
include applicable real estate taxes and hazard insurance according to the Schedule.

AMC Mortgage Services, Inc. ("AMC") (inadvertently described therein as loan servicer for
Argent Mortgage Company, LLC, although, as will be established below, the reference should have been

to Deutsche Bank and not to Argent) filed a timely proof of claim (claim #10) on August 24, 2007 (the

deadline was September 17, 2007) evidencing a total secured claim of $354,425.38.   No objection or

motion to enlarge was filed with respect to AMC's claim within the time proscribed by Section 13-3(b),

Appendix – Chapter 13 Rules, of the Local Rules of Bankruptcy Procedure.

Deutsche Bank filed a Motion for Relief from the Automatic Stay to foreclose its first mortgage

on the Rental Property on August 13, 2007 (#27).  The Debtor filed a timely objection wherein the

Debtor, inter alia, asserted by way of an affirmative defense that Deutsche Bank was not the holder of

the mortgage and therefore lacked standing to bring the motion.  A preliminary hearing was scheduled

for September 27, 2007 and subsequently continued to October 4, 2007 by agreement of the parties.

There is no dispute that at the October 4, 2007 continued hearing, counsel for both parties were in

attendance and that both parties, through counsel, consented  to the entry an of order granting relief

from stay to Deutsche Bank in accordance with the prayers contained in its motion effective as of

December 4, 2007.  Subsequently, the Court endorsed the proposed order annexed to Deutsche Bank's

Motion (entered as document no. 46) which order provides in relevant part as follows:

> "2. Deutsche Bank and any successor-in-interest is permitted to pursue its rights and
> remedies under state and federal law including but not limited to a foreclosure of a
> mortgage on real estate located at 31 Downer Avenue, Dorchester, Massachusetts,
> which mortgage the Debtor executed to Argent Mortgage Company.  The mortgage is
> dated July 14, 2006 and is recorded in the Suffolk County Registry of Deeds in Book
> 40001, Page 103 (sic.80).  Further, Deutsche Bank is authorized to proceed with its
> eviction rights with respect to such property should Deutsche Bank, or its successor in
> interest, become the successful bidder at foreclosure sale."

Deutsche Bank later moved to amend order no. 46 to correct the erroneous registry of deeds reference

(substituting "page 80" for "page 103")(motion to amend filed March 5, 2008 as #74).  The motion was

summarily allowed the same day (#77).  No appeals were filed in respect to the original order (# 46) or

the amended order (#77).

On May 8, 2008, and prior to Deutsche Bank's completion of foreclosure proceedings, the

Debtor filed his Motion to Vacate (#104) the Court's October 4, 2007, order granting relief as amended

by the Court's subsequent order of March 5, 2008, on the basis of changed circumstances.  The Debtor

asserted that these changed circumstances were:  (a) he had now found tenants for each of the dwelling

units in the Rental Property (in fact, however, these two units had been occupied and the Debtor had

been and continues to collect rent from the two units since November of 2007 as reflected in the

Debtor's Cash Flow Statement filed with the Court (#170) and (b) his filing of a Second Amended Plan

(#99) which altered the proposed treatment of Deutsche Bank's first mortgage claim by determining the

extent of such claim to the current value of the property ($345,000.00) as estimated by the Debtor and otherwise modifying the terms of the loan to a fixed interest rate of 7.15% per annum (claim, as modified to be paid over remaining 23 months of plan on basis of 30 year amortization with a balloon payment of the loan balance at the end of the  plan).  In his Motion to Vacate Debtor averred, inter alia, that "Absent relief, the *mortgagee* (emphasis added) will continue foreclosure proceedings, thereby potentially rendering the Debtor's plan moot."  The Debtor explains in a footnote on page 2 of his motion that "the "proper party issue was raised in [response] to the motion for relief from stay but *not pursued* (emphasis added) based on an assumption by Debtor's counsel that the proper assignment could be produced since Deutsche Bank's counsel was presumed to have investigated the facts prior to filing the motion".

The Court allowed the Debtor's Motion to Vacate on May 29, 2008, but also ordered the Debtor to tender all net rents forthwith to the Trustee who shall distribute them to the mortgagee (#136).  The Debtor's Motion to Use Cash Collateral, i.e., the income from the Rental Property, was also allowed on a preliminary basis that same day contingent upon the Debtor filing a reconciliation of expenses prior to the July 17, 2008 continued hearing date (#132).

Having received no distributions from the Trustee, Deutsche Bank filed its pending Motion to Vacate the court's prior order vacating the October 4, 2007 order, as subsequently amended, granting it relief from stay.  According to the summary of receipts and distributions appearing on the Trustee's website, the Debtor has paid a grand total of $3,080.00 to the Trustee since the inception of the case in May, 2007 (copy attached as Exhibit A).  Moreover, there has been no contention throughout these protracted proceedings that Deutsche Bank or its loan servicer has negotiated any payments tendered or allegedly tendered by the Debtor (indeed the Second Amended plan calls for Debtor's payments to be made solely to the Chapter 13 Trustee who will then make distributions to AMC).  The Debtor's dismal payment record is difficult to reconcile with his Cash Flow Statement filed July 17, 2007 (#170) which, on its face, indicates that the Debtor has been receiving gross rents of $2300.00 per month from the Rental Property since November of 2007.  Through June of 2007, the Statement reflects gross rents of $18,400.00 against expenses, including real estate taxes and hazard insurance of $4,679.95.  Accordingly the Debtor has collected net rents of $13,730.05 since November 2007 yet, has only made combined payments to the Trustee and AMC of $3,080.00 during this same time period.

The Rental Property is not the Debtor's sole source of income.  To the contrary, Schedule I indicates that the Debtor has been employed as a service technician with Keyspan for the past four (4) years netting $4,080.72 from such employment after a healthy deduction of $1,715.00 a month for "1%

ben. deduction; 401k loans; bond." Notwithstanding the foregoing, the Debtor's Second Amended Plan proposes *a total monthly plan payment* to the Trustee, with no direct distributions by the Debtor to Deutsche Bank/AMC, of $2,000.00. It is unclear from reviewing the Debtor's schedules as to how the Debtor can now suggest that the plan payment of $2,000 is to include the apparent net rental income of $1,719. In fact Debtor's Amended Schedule J does not properly include tax payments of $346.65 he claims to be making.[1] There are other additional claims, including those secured claims on his principal residence in the total amount of $21,307.60, in addition to priority claims of approximately $10,000 and administrative of claims of $2,000 that are also to be paid through the plan. Debtor has not been able to explain how these claims will be paid from the remaining $281 that will remain, if in fact the net rents of $1,719 are to be paid to Deutsche Bank from the total plan payment of $2,000. The mathematics of this is not logistically feasible.

Now more than a year into his chapter 13 case , the Debtor has responded, apparently out of desperation, with a flurry of pleadings including (a) his motion to vacate the relief order (#104); (b) an untimely objection to AMC's Proof of Claim (#175) and (c) a baseless and ill-researched adversary proceeding (filed July 17, 2008) each of such pleadings being founded in whole or in part on the debtor's exhumed and now reconstituted assertion that Deutsche Bank is not the true party in interest and rightful holder of the subject mortgage.


ARGUMENT

Application of the Collateral Estoppel Doctrine Precludes the Debtor from Exhuming and Reasserting at this late hour that Deutsche Bank lacks standing to obtain relief from stay

Deutsche Bank concedes that the jurisdictional matter of standing cannot be waived by the parties. *Together Development Corp. v. Pappas,* 262 B.R. 586 (2001), citing *United States v. AVX Corp.,* 962 F.2d 108 (1st Cir. 1992). *See also Doe v. Tangipahoa Parish School Board, No. 05-30294*, Case No. 05-3763 (5th Cir. 2007). As the Court explained in *In re Nardone*, 2008 WL 2705524 (D.Mass.2008), however, "a waiver is different than the application of collateral estoppel in that "while the former is against public policy, the later is not" *Nardone*, at 11.

The Debtor, indeed, did not waive the standing issue by silence during these proceedings. To the contrary, Deutsche Bank contends that not only did the Debtor not waive the standing issue, he

---

[1] Deutsche Bank notes that it disputes that Debtor is in fact paying this tax amount as it has been paying the property taxes on the Rental Property for the past year.

specifically included same as a direct affirmative defense (as opposed to an indirect defense such as fraud, preference/avoidance action, TILA violation, etc.) in his objection to the motion for relief (#32), and that the standing issue was actually litigated and a final judgment rendered at the conclusion of the proceedings which was not appealed by either party and which implicitly incorporated a finding that Deutsche Bank was the rightful party in interest and authorized it not only to foreclose on the mortgage but also to prosecute summary process actions against the occupants of the Rental Property in the event it (Deutsche Bank) were the successful high bidder at the foreclosure sale.

Collateral estoppel, or issue preclusion, prevents the relitigation of issues already litigated. *Nardone* at 3.  A prior finding is conclusive in all subsequent proceedings if its meets five requirements: (1) the party sought to be precluded was a party, or in privity with a party, to the previous proceeding; (2) the current issue is identical to that involved in the prior proceeding; (3) the issue was actually litigated; (4) the issue was determined by a valid and final judgment; and (5) the determination was essential to the judgment.  *In re Suggs*, 377 B.R. 198 at 205 (BAP 8th Cir. 2007)(citations omitted).

There can be no debate over the fact that the first and second elements, as well as the "finality" component of the fourth element have been satisfied.  The parties to the current motion for relief proceedings are, of course, identical to the parties who consented to the court's prior order (#46 and #77).  The parties to the adversary proceeding affected by this standing issue are the same, or in the case of AMC and Argent, in privity with Deutsche Bank.  The standing issue which Debtor now attempts to resurrect is exactly the same as that raised in his initial opposition to the motion for relief (#32).  The judgment granting Deutsche Bank relief was final (#46 as amended by #77) and the Debtor did not take an appeal of either judgment.

Deutsche Bank further contends that for purposes of the collateral estoppel doctrine the standing issue was "actually litigated;" that implicit in the court's final judgment was a finding that Deutsche Bank was the true party in interest and that such determination was essential to such judgment.

Deutsche Bank acknowledges that courts have refused to apply the doctrine of collateral estoppel or the related but distinct doctrine of res judicata/claim preclusion in instances where the proponent has asserted that the precluded party failed to raise or litigate an issue or claim constituting an indirect defense or substantive counterclaim to an earlier motion for relief from stay filed by the proponent and which defense or claim was, by virtue of applicable local rule or governing judicial precedent, more appropriately raised in the context of an adversary proceeding.  *Grella v. Salem Five Cents Savings Bank,* 42 F.3d 26 (1st Cir. 1994)(chapter 7 Trustee's preference counterclaim versus Bank

not precluded by previous order granting Bank relief from stay; Trustee neither filed an objection to the motion nor did he attend the hearing on the motion). *D-1 Enterprises, Inc. v. Commercial State Bank*, 864 F.2d 36 (5th Cir. 1989) (agreed order lifting stay and abandoning certain assets of the debtor to the creditor, entered in a contested proceeding is not res judicata of various tort claims against the creditor including bad faith acceleration of the note and wrongful foreclosure).

The focus of both *Grella* and *D-1* is on the summary nature of motion for relief proceedings and their conclusion that "counterclaims against a creditor seeking to lift the stay on largely unrelated matters are not to be handled in the summary fashion required by the expedited nature of the proceeding." *864 F.2d at* 38. The Court in *D-1* further observes as follows:

> "Consistent with the legislative history, the courts have held that 'indirect defenses' such as breach of contract, fraud and the like, would be severed from the expedited stay litigation if raised in an effort to defeat the creditor's motion (*citations omitted*) . . . The lender liability claims asserted in the adversary proceeding at issue in this case were not, under the foregoing analysis, 'direct defenses' that the debtor could or should have litigated in response to the creditor's motion for relief from the stay."

*Id. at 39*.

If ever there existed a "direct defense" to a motion for relief from stay then an assertion that the moving party is not the holder of the obligation or rightful party in interest is certainly such a direct defense. It has been said that "the 'guiding principle' in determining whether to allow a party the use of collateral estoppel is whether the party against whom it is asserted had a 'full and fair opportunity to litigate the issue in the first action or whether other circumstances justify affording him an opportunity to relitigate the issue." *Nardone* at page 3 *citing Martin v. Ring*, 401 Mass. 59, 62, 514 N.E.2d 663, 664 (1987) *quoting* Restatement (Second) of Judgments, Section 29 (1982). The fact that the Debtor had a full and fair opportunity to assert such a central issue which he raised in his opposition to the Motion cannot be seriously debated. A motion for relief is a contested matter to which the adversary rules, including most of the discovery mechanisms embodied in the Federal Rules of Civil Procedure, apply. Issues pertaining to the rightful holder of the mortgage and tender/proper accounting of mortgage payments are frequently and customarily litigated in the context of motions for relief from stay before this court and other Bankruptcy Court Judges in this district. The Debtor could have conducted discovery and/or requested an evidentiary hearing but opted for his own reasons not to do so.

The world has evolved since *Grella* and the reality of mortgage securitization whether welcomed or not has precipitated more litigation over the rightful party in interest/holder in the context of a motion for relief hearing than may have taken place when *Grella* was decided. *See In re Sima Schwartz*,

Case No. 06-42476-JBR (Bankr.D.Mass.2007); *see also In re Maisel*, Case No. 07-43324-JBR (Bankr.D.Mass.2007). The issue of standing has not been casually discarded as an indirect defense or a noncompulsory counterclaim best litigated in an adversary proceeding. Rather it has become in many instances a threshold issue in motion for relief proceedings. Moreover, the local rules require that the original mortgagee and every subsequent transferee of the mortgage be set forth in the motion (Local Rule 4001-1). Even though Deutsche Bank's motion did not recite the applicable assignment memorializing its acquisition of the subject mortgage as the same had not been recorded as of the filing date of the initial motion, the Debtor "assum[ed] that the proper assignment could be produced". See Debtor's Motion to Vacate (#104). The Debtor was under no duress or compulsion to assume any fact or consent to any judgment other than that brought on by circumstances

Given the foregoing it is difficult to reach any conclusion other than the fact that Deutsche Bank was the rightful party in interest/holder of the subject mortgage was necessarily implicit and a necessary and integral part of the court's order to which debtor assented granting Deutsche Bank relief to both foreclose the mortgage and thereafter, if the successful high bidder at sale, to prosecute summary process action(s) against the occupants.

These real and ultimately final consequences of consenting to an order granting relief from stay where certainly known and appreciated by the Debtor at the time of the original order (October 4, 2007) and even more so at the time of the entry of the amended order (March 5, 2008 – tenants per #170 had occupied the property since November, 2007). One Federal practice treatise as opined as follows:

> "Justice, then, is probably better served if the principle of collateral estoppel does not apply to unlitigated issues underlying default or consent judgments, or to issues determined by the parties, *unless it can be said that the parties could reasonably have foreseen the conclusive effect of their actions.*"

*Nardone*, infra at page 10, *citing 1 B.J. Moore, J Lucas & T. Currier, Moore's Federal Practice, paragraph 0.444(1),* at 794 (2nd ed.1984)(emphasis added). What then can be more conclusive than a foreclosure sale divesting the debtor and/or other equity owners of title, possible sale to a bona fide purchaser for value and eviction of the mortgagor and/or his tenants from the property? These are events which flow naturally and predictably from the entry of an order granting a party relief to foreclose a mortgage.

Deutsche Bank asserts that it and every one of the necessary elements of collateral estoppel is satisfied in this instance and that the Debtor should be precluded in this late hour of the proceeding to relitigate the standing issue, one he had more than a full and fair opportunity to litigate in the context of the previous motion for relief proceedings.

<u>Deutsche Bank is Ready, Willing and Able to Demonstrate that it has Standing, in any event,</u>

<u>as the Holder of the Subject Mortgage</u>

The Debtor gave a first mortgage on his Rental Property to Argent Mortgage Company dated July 14, 2006, as duly recorded with the Suffolk County Registry of Deeds in Book 40001, Page 80, a copy of which is annexed hereto as <u>Exhibit B</u> (the "Mortgage").   An Assignment of Mortgage from Argent Mortgage Company to Deutsche Bank bearing an effective date of July 23, 2007, as per the recital therein and acknowledged on February 20, 2008 was recorded with Suffolk Deeds on February 26, 2008, in Book 43152, Page 234 (a copy is annexed hereto as <u>Exhibit C</u>).   The Assignment is executed by Tamara Price, Vice President of CitiResidential Lending, Inc., attorney-in-fact for Argent Mortgage Company.  A Limited Power of Attorney dated October 18, 2007 specifically authorizing CitiResidential to execute assignments or "substitutions of trustee" as they are called in other jurisdictions having Deeds of Trust rather than Mortgages is duly filed with the Essex South Registry District of the Land Court as Document No. 488066 (page 2, paragraph no. 8, subparagraph (a)).

Count I of the Debtor's two-count adversary complaint (Count II pertains exclusively to the second mortgage on the Rental Property) is founded on a poorly researched and baseless set of factual assertions.  Reference is made to paragraph 71 of the Debtor's Complaint wherein he asserts that Argent Mortgage Company is a stranger to the Pooling and Servicing Agreement referenced above (to with, "Ameriquest Mortgage Securities, Inc. Asset Backed Pass Through Certificates, Series 2006-M3 under the Pooling and Servicing Agreement dated as of September 1, 2006" – hereinafter the "PSA") and therefore not "authorized" to convey mortgages to the Trust.  The Debtor, through his attorney, claims to have accessed the PSA via the Securities and Exchange Commission's website and to have reviewed same (Complaint, paragraphs 65 through 70).  The Debtor has overlooked that portion of the PSA, and particularly page 44 thereof, a copy of which is annexed hereto as <u>Exhibit D</u>.  This section specifically provides that the originators of the loans conveyed or to be conveyed to the pool are "Argent Mortgage Company, LLC and Ameriquest Mortgage Company".  Indeed the Prospectus filed with the SEC relative to the PSA and also available to the public online further discloses that 93.31% of the loans in the pool were originated by Argent and 6.69% by Ameriquest (this relevant portion of the Prospectus is annexed hereto as <u>Exhibit E</u>).[2]  The Debtor's further assertion by inference in paragraph 73

---

[2] Given the voluminous nature of both the PSA and the Prospectus, only the relevant portions are attached to this pleading.  Both documents in their entirety are available upon request.

of the Complaint must be made via the depositor (Ameriquest Mortgage Securities, Inc.) is unfounded for the same reason.

Additionally, Exhibit 1 of the PSA is a Mortgage Loan Schedule which sets forth all of the loans included within PSA.  The Debtor's loan number (100244078) is clearly provided in this schedule, as is the state and city of the Rental Property.  A copy of the relevant section of this Mortgage Loan Schedule is annexed hereto as Exhibit F.

The Debtor assails the power of attorney produced by Deutsche Bank in validation of the Limited Power of Attorney granted by Argent to CitiResidential and CitiResidential's subsequent execution of the assignment of Mortgage on Argent's behalf.  Deutsche Bank has annexed hereto as Exhibit G a detailed Limited Power of Attorney outlining the scope of Citi's authority in foreclosure proceedings and particularly to execute substitutions of trustee or what we more commonly refer to in this jurisdiction as "assignments of mortgage".

The debtor also references the fact that on or about July 17, 2008, he filed an objection to AMC's proof of claim.  This objection is untimely by at least eight months under Section 13-3 of the Appendix to the Local Rules and therefore should not be considered.

The Debtor has paid a combined total of $3,080.00 to the Trustee and AMC/Deutsche Bank over the first 15 months of this case.  Moreover, the Debtor's Second Amended Plan suffers from a variety of obvious infirmities including noncompliance with the equal payment provision (11 U.S.C. Section 1325(a)(5)(B)(iii)(I)) and failure to pay the present value of the Deutsche Bank/AMC claim over the 36 month term of the plan in violation of 1325(a)(5)(B)(ii).  Having made no adequate protection payments to Deutsche Bank or its servicer, indeed having made no payments at all to such entities for the first 15 months of the plan, and the plan only proposing to pay interest on such claim for the remaining 23 months of the plan, the plan as proposed most certainly does not propose to pay Deutsche Bank the present value of its claim as determined as of the filing date of the petition.

Certainly, in the words of the *Grella* court, Deutsche Bank has made out a "colorable claim" and right to entry of an order granting it relief from stay without further delay.  Even if the Debtor's standing claims are not barred by the application of the collateral estoppel doctrine relief should be granted to Deutsche Bank forthwith and the Debtor put to the more stringent requirements of obtaining an injunction, including establishing a likelihood of success on the merits of his claim, in the context of his adversary proceeding, if he wants to attempt to enjoin Deutsche Bank from resuming the foreclosure process.

Wherefore, Deutsche Bank respectfully requests that the Court:

(1) Grant its motion to vacate the Court's previous order vacating order #46 as amended by #77 granting Deutsche Bank relief from the automatic stay to foreclose the Mortgage and thereafter to prosecute one or more summary process actions against the occupants of the Property; and

(2) In the alternative, issue a new order forthwith granting Deutsche Bank relief from the automatic stay to foreclose the Mortgage and thereafter to prosecute one or more summary process actions against the occupants of the Property; and

(3) Grant such further relief as the Court deems just.

Respectfully submitted:

Dated: August 4, 2008

Deutsche Bank National Trust Company,
by its Attorney:

/s/ Julie A. Ranieri, Esquire
Julie A. Ranieri
Korde & Associates
321 Billerica Road, Suite 210
Chelmsford, MA. 01824
Tel: 978-256-1500
BBO# 655936

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| In Re: | Case Number 07-12746-JNF |
| Alexander V. Brown | Chapter 13 |

### CERTIFICATE OF SERVICE

I, Julie A. Ranieri, Attorney for Deutsche Bank National Trust Company, As Trustee of Ameriquest Mortgage Securities, Inc. Asset Backed Pass-Through Certificates, Series 2006-M3 Under the Pooling and Servicing Agreement Dated as of September 1, 2006 hereby certify that on August 4, 2008 I electronically filed the foregoing *Memorandum of Law* with the United States Bankruptcy Court for the District of Massachusetts using the CM/ECF System. I served the forgoing documents on the following CM/ECF participants:

John Fitzgerald, US Trustee
Carolyn Bankowski, Trustee
David G. Baker, Esq.

I certify that I have mailed by first class mail, postage prepaid the documents electronically filed with the Court on the following non-CM/ECF participants:

Alexander V. Brown
126 Msgr. Lyden Way
Dorchester, MA  02124

City of Boston
Tax Collector
One City Hall Square
Boston, MA  02201

Alexander V. Brown
31 Downer Avenue
Dorchester, MA 02125

/s/ Julie A. Ranieri
Julie A. Ranieri, Esquire
Korde & Associates
321 Billerica Road, Suite 210
Chelmsford, MA. 01824